MARY SCHULTZ
MARY SCHULTZ LAW, P.S.
2111 E. Red Barn Lane
Spangle, WA 99031
Tel: (509) 245-3522
Fax: (509) 245-3308
E-mail: Mary@MSchultz.com

Attorney for Plaintiff

The Hon. Stanley Bastian

# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WASHINGTON

| STEVEN HONKUS, | NO. 2:16-CV-00312-SAB |
|---|---|
| Plaintiff, | RESPONSIVE COUNTER MOTION IN LIMINE – |
| v. | |
| TRIMBLE NAVIGATION, LTD., | EXPERT REPORT OF MATTHEW MEDLIN |
| Defendant. | Date: May 17, 2018<br>Time: 10:00 a.m.<br>Spokane |
| | With Oral Argument |

Plaintiff Steven Honkus, through counsel, Mary Schultz of Mary Schultz Law, P.S., files this responsive countermotion in limine to defendant Trimble Navigation's motion in limine filed at *ECF 47*.

COUNTER MOTION IN LIMINE – EXPERT REPORT OF MATTHEW MEDLIN
Page 1 of 11

Mary Schultz Law, P.S.
2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

## I. Responsive Counter-Motion.

Trimble's motion, filed at ECF 47, and set for hearing on May 17, 2018 at 10:00 a.m., seeks to exclude Mr. Honkus' expert witnesses Dr. Stephen Diamond and Dr. Thomas Selling. Mr. Honkus will timely respond to that motion by responsive memorandum; however, as an initial part of his response, Mr. Honkus submits this responsive countermotion in keeping with the court's text order regarding the timely filing of Daubert motions. *ECF 25.* Mr. Honkus will argue *against* the exclusion of expert testimony in response to Trimble's motion. But as summarized herein, Trimble's motion, if granted, would require similar exclusion of Trimble's expert, Matthew Medlin.

## II. Basis.

The SOX whistleblower statute, 18 U.S.C.A. § 1514A, prohibits Trimble, as a publically traded company, from discharging, threatening or harassing, or in any other manner discriminating against Mr. Honkus in the terms and conditions of his employment because of any lawful act done by him:

"**(1)** to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or

Mary Schultz Law, P.S.
2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

1348, or any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, ….."

*18 U.S.C.A. § 1514A.*

To establish the elements of his claim, Mr. Honkus must therefore establish his belief that what he was reporting was Trimble's violation of either a SOX statutory section, or, more generically, "any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, ….." *Id.* He must also establish that this belief was reasonable. In order to trigger the protections of the Act, an employee must have "(1) a subjective belief that the conduct being reported violated a listed law, and (2) this belief must be objectively reasonable." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1000-01 (9th Cir. 2009), *quote source omitted.*

This "related to fraud" requirement is not something delivered to a jury through a jury instruction. Indeed, an employee "need not cite a code section he believes was violated" to trigger the protections of § 1514A. Instead, if the employee's statements to supervisors report conduct that definitively and specifically related to shareholder fraud, then "[T]hat is all that § 1514A requires." *Van Asdale,* 577 F.3d at 997. What thus constitutes something that subjectively and objectively "definitively and specifically relates to shareholder

Mary Schultz Law, P.S.
2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

fraud" is at issue. What objectively, definitively, and specifically relates to shareholder fraud within the SOX regulatory scheme is a complex issue. This is where expertise comes in. What companies and employees should know regarding what relates to shareholder fraud are generally not learned by studying explicit statutes, but through company compliance procedures, and, often, on the job osmosis. *Dec. of Schultz, Ex. C, Dorr Deposition at pp. 11-12; 56* (a sales manager who came to an understanding over the course of his years of employment of what regulatory controls exists as to publically traded companies, and came to understand that intentionally misrepresenting financial performance would violate regulatory requirements); but then compare *Schultz, Ex. B, Controller Lu Shi Deposition* (Trimble's TCL business controller, who testifies that she doesn't know whether it is "against the law" to consistently and knowingly inflate forecasts).

Indeed, even beyond the employee's subjective belief, the employee must also show that Trimble supervisors, here, e.g., general managers, executive vice presidents, business controllers, and the corporate CFO, would and/or should have known that what Mr. Honkus was reporting was conduct that could reasonably have been considered illegal under the regulatory scheme. That is, Mr. Honkus "also must establish that '[t]he named person

MARY SCHULTZ LAW, P.S.
2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

knew or suspected, actually or constructively, that the employee engaged in the protected activity.'" *Id, at 1002, citing to 29 C.F.R. § 1980.104(b)(1)(ii).*

Defendant Trimble has seized on this subjective/objective requirement. Trimble's defense, in part, is this:

"1. That Plaintiff was not engaged in protected activity under state or federal law."

*ECF 17, Affirmative Defenses at p.11.*

Trimble's defense thus asserts that it is not reasonable for Mr. Honkus to believe that his business unit's inflating earnings at the business unit level was, or would not be, reasonably related to shareholder fraud, (and thus protected activity), and that such business behavior is not objectively related to shareholder fraud. To refute that defense requires an understanding of exactly what business practices *relate* to shareholder fraud, what employees should reasonably believe relates to fraud, and what corporations are necessarily tasked to implement as compliance procedures to prevent fraud, including what business behavior "flags" or communicates such illegality. The Court will thus hear about business practices, such as the requisite "internal controls" and "internal audits," both of which are business structures that ensure regulatory compliance. These practices are why, e.g. executive vice presidents of sales

COUNTER MOTION IN LIMINE – EXPERT REPORT OF MATTHEW MEDLIN
Page **5** of **11**

*Mary Schultz Law, P.S.*
2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

are not sent to investigate a business unit's relentless inflating of its forecasts—such a process would be knowingly bogus. Internal audit, and auditors are what are used within such companies to address repeated financial anomalies. But a jury will not know this absent hearing of the industry regulatory compliance practices.

As will be explained in Mr. Honkus' upcoming response to Trimble's motion, regulatory compliance consists of business practices and internal compliance processes that "relate to" shareholder fraud, and therefore the very definition of protected activity is encompassed within those same practices.[1] Similarly, whether Trimble management would have known that Mr. Honkus' reporting flagged *compliance* mandates requires the same expert testimony. It is, as an example, untenable for a business controller to think that inflating forecasts is just a matter of "corporate culture." *See Exhibit B, Shi.* As attested by sales employee Dorr, limitations on such behavior are known by employees

---

[1] *See, e.g.,* "Corporate Compliance Programs," which "ensure compliance with the requirements of the Sarbanes-Oxley Act… as regards the handling of employee complaints." *See, e.g., Business Transactions Solutions § 223:78, April 2018 Update, Alan S. Gutterman, Part IX. Governance and Compliance, Chapter 223. Compliance Programs, Forms.*

Mary Schultz Law, P.S.
2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

in reporting companies to implicate illegality. *See Exhibit C, Dorr*.

Here, Trimble executives and others could readily and self-servingly claim whatever they like about Trimble's corporate compliance, as does, e.g., Ms. Shi. Trimble higher management executives could testify they had no idea that a business unit inflating its forecasts would be a compliance concern, and falsely assert that forecasting is objectively *not* a concern as a matter of business compliance. Witnesses could mislead a jury on how compliance is allegedly done within corporations or not done. Such self-serving testimony from executive corporate witnesses such as a CFO or even a general manager cannot be effectively shown to be false by Mr. Honkus or his lawyer arguing with the witness. This is where expert testimony comes in.

Expert evidence thus provides a necessary understanding of how public companies structure, implement, and perform their compliance obligations under federal securities law, and, thereby, what management would, or should, understand as a matter of course and compliance upon being presented with Mr. Honkus' reporting. The testimony allows Mr. Honkus to establish the elements of his claim, and to show the falsity of the defenses offered by Trimble.

Mary Schultz Law, P.S.
2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

Here, Trimble's own defense expert Matt Medlin discusses some of these intricacies of Trimble's intended defense. Mr. Medlin proposes to testify, e.g.:

1) That a reasonable lower level employee of a publically traded company should allegedly know about company-wide sales forecasting:

> "Opinion 1 – Mr. Honkus should have known TCL's sales forecast misses were not meaningful in comparison to Trimble's actual sales.
>
> Opinion 2 – Mr. Honkus should have known TCL's sales forecast misses were not meaningful in comparison to Trimble's forward-looking sales guidance.
>
> Opinion 3 – Mr. Honkus should have known Trimble's actual sales were, more often than not, in or above the range of forward-looking sales guidance;"

2) That Trimble business unit TCL's "missed sales forecasts" were not "material" given the entirety of the company's reporting, and that certain accounting standards don't apply to Trimble:

> "Opinion 4 - The Selling Report improperly applies SAB 99, SAS 107 and AS 2105 and then inappropriately ignores key elements of these statements; if applicable, these three statements would cause a reasonable business person to conclude that the TCL sales forecast misses were not material;"

3) That a reasonable employee of a publically traded company should know about the various SEC compliance forms, and what is and is not

Mary Schultz Law, P.S.
2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

allegedly included in such reporting:

> "Opinion 5 - Mr. Honkus should have known TCL's sales forecast was not a component of annual or quarterly financial statements filed with the SEC in Forms 10-K or 10-Q;" and,

4) That a regulatory exception known as "Safe Harbor" applies to forward looking sales guidance:

> "Opinion 6 - Mr. Honkus should have known the forward-looking sales guidance provided by Trimble to the public was covered by the Safe Harbor provisions of the Private Securities Litigation Reform Act of 1995."

*Ex. A, Medlin report, pp. 3-4, "Summary of Opinions," ¶ 12.*

Such defenses require that the jury be given some understanding of why these are disingenuous defenses in the field of SOX regulation.

### III. Conclusion.

Mr. Honkus will timely submit argument on why the exclusion of expert testimony under such circumstances is error. This present countermotion to exclude Mr. Medlin's report and his testimony is filed only for the purpose of ensuring that, were the Court to (erroneously) grant any exclusion order, then Defendant's SOX expert, Matthew Medlin, must also be excluded.

Mary Schultz Law, P.S.
2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

DATED this 20th day of April, 2018.

**MARY SCHULTZ LAW, P.S.,**

/s/<u>Mary Schultz</u>
WSBA #14198
Attorney for Plaintiff
**Mary Schultz Law, P.S.**
2111 E. Red Barn Lane, Spangle, Washington 99031
Tel: (509) 245-3522/Fax: (509) 245-3308
E-mail: Mary@MSchultz.com

Mary Schultz Law, P.S.
2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is a person of such age and discretion as to be competent to serve papers; and that on **April 20, 2018**, the foregoing document was filed with the Clerk of the Court, using the CM/ECF System, which will send notification of such filing to all registered attorneys in this action.

DATED this **20th** day of **April, 2018**.

/s/**Mary Schultz**
WSBA #14198
Attorney for Plaintiff
**Mary Schultz Law, P.S.**
2111 E. Red Barn Lane
Spangle, Washington 99031
Tel: (509) 245-3522/Fax: (509) 245-3308
E-mail: Mary@MSchultz.com

Mary Schultz Law, P.S.
2111 E. Red Barn Lane
Spangle, WA 99031
Phone: 509.245.3522 • Fax: 509.245.3308